**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| HARLIN QUINONEZ PEREZ, | ) | |
| | ) | |
| | ) | Case No. 1:25-cv-13445-LTS |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID T. WESLING, et al. | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF PETITIONER'S**
**MOTION TO ENFORCE JUDGMENT**

1

# **TABLE OF CONTENTS**

I.      INTRODUCTION…………………………………………………………………..1

II.     FACTUAL AND PROCEDURAL HISTORY…………………………………….2

    A.  Petitioner's Life In The United States………………………………………….2

    B.  Petitioner's November 26, 2025 Bond Hearing………………………………...3

    C.  Petitioner's March 2, 2026 Bond Hearing………………………………….…...3

III.    ARGUMENT…………………………………………………………………………4

    A.  This Court Has Jurisdiction To Decide Petitioner's Motion To Enforce…………4

    B.  Petitioner Is Not Required To Exhaust Administrative Remedies Because He Is Suffering Irreparable Harm While Detained………………………………………8

    C.  Petitioner Should Be Released Because He Did Not Receive A Bond Hearing That Complied With Due Process As Required By This Court………………………...10

        1.  The IJ did not properly allocate burdens of proof in compliance with Hernandez-Lara, as required by this Court………………………………10

            a.  The plain language of the IJ's order denying bond is deficient on its face………………………………………………………………...10

            b.  The IJ's oral decision makes clear that she did not hold DHS to their burden of proof……………………………………………………….11

            c.  The IJ did not address the evidence submitted by Mr. Quinonez Perez.14

        2.  The IJ's reliance solely on an unproven, dismissed charge was so arbitrary that it rendered the proceedings fundamentally unfair, thus violating fundamental tenets of due process…………………………………………15

        3.  The IJ failed to consider alternatives to detention in her analysis of flight risk……………………………………………………………………..17

IV.     CONCLUSION……………………………………………………………………19

## I.    **INTRODUCTION**

Despite this Court's Order that Petitioner be provided with a fair opportunity to apply for release, Petitioner Harlin Quinonez Perez ("Petitioner" or "Mr. Quinonez Perez") remains unlawfully detained by Respondents at the Plymouth County Correctional Facility. Twice, on November 26, 2025 and on March 2, 2026, Mr. Quinonez Perez was denied bond by Immigration Judges ("IJ") in hearings that did not comply with the Due Process Clause of the Fifth Amendment of the United States Constitution, the standards established in *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021), and this Court's Order dated November 19, 2025. Exh. 1, November 26 Bond Order; Exh. 2, March 2 Bond Order; Doc. No. 6.

The IJ denied Mr. Quinonez Perez's applications for bond, finding that the government had shown Mr. Quinonez Perez was a danger to the community by clear and convincing evidence based solely on an arrest and unproven (and later dismissed) charge. *See* Exh. 1; Exh. 2; *see also* Exh. 3, March 2 Transcript. Mr. Quinonez Perez's bond hearings[1] did not comply with *Hernandez-Lara* or due process requirements under the Fifth Amendment because (1) the IJ did not properly allocate burdens of proof in compliance with *Hernandez-Lara*, and the government failed to satisfy its burden by proving by clear and convincing evidence that Mr. Quinonez Perez is a danger; (2) the IJ's exercise of discretion in denying bond was arbitrary such that it violated due process; and (3) the IJ failed to consider alternatives to detention in her analysis of dangerousness. **Mr. Quinonez Perez therefore respectfully requests that this Court enforce its Order and grant his release**. In the alternative, Mr. Quinonez Perez asks for this Court, pursuant to its equitable powers, to release Mr. Quinonez Perez on alternatives to detention such as GPS monitoring, hold

---

[1] Although neither of Mr. Quinonez Perez's bond hearings comported with due process, this Memorandum will primarily address Mr. Quinonez Perez's March 2, 2026 bond hearing as it was the most recent one.

its own bond hearing, instruct the Immigration Court to hold a new bond hearing that complies with this Court's original Order, or grant any other relief that the Court sees fit.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.  Petitioner's Life In The United States

Mr. Quinonez Perez is a 33-year-old citizen of Guatemala who came to the United States to seek safety in September 2019. Exh. 5 (Respondent's Bond Evidence), Tab A at ¶¶ 1, 2. After arriving in the United States, Mr. Quinonez Perez moved to Chelsea, Massachusetts, where several members of his family already lived. *Id*. A few years after his arrival, his wife, Elvia, and their oldest child moved to the United States and joined Mr. Quinonez Perez in Chelsea. *Id.* There, they lived together peacefully and Mr. Quinonez Perez worked hard to support himself and his family. Mr. Quinonez Perez is eligible for viable immigration relief through his pending asylum application based on his fear of return to Guatemala.

Mr. Quinonez Perez has never been convicted of a crime anywhere in the world. During his six years in the United States, his only interaction with law enforcement was an October 2025 arrest stemming from a verbal argument with his Elvia. Exh. 5, Tab A at ¶ 6. Like any married couple, they were arguing about the division of tasks and chores in the household. *Id.* At the time of this argument, Mr. Quinonez Perez and Elvia had an 8-month-old baby and were stressed, like most parents to newborn babies. *Id.*; Exh. 5, Tab H (birth certificate of Dayana Esmeralda Quinonez Mendez). The neighbors called the police and Mr. Quinonez Perez waited for the police outside their apartment. Exh. 5, Tab A at ¶ 6. When the police arrived, they spoke to both Mr. Quinonez Perez and his wife. *Id.* He was taken to the police station in Chelsea, Massachusetts and subsequently detained by ICE. *Id.* Mr. Quinonez Perez has been detained by Respondents ever since at Plymouth County Correctional Facility in Plymouth, Massachusetts. *Id.* at ¶ 8.

On November 5, 2025, Mr. Quinonez Perez, through undersigned counsel, filed a joint Petition for Writ of Habeas Corpus with several other immigration detainees to request the immigration court provide him with a bond hearing. *Alcantara Lugo v. Hyde*, No. 1:25-cv-13296-RGS, Doc. No. 1. After the original Petition was dismissed without prejudice[2], undersigned counsel filed another Petition as the sole petitioner. Doc. No. 1. On November 19, 2025, this Court ordered Respondents to release Mr. Quinonez Perez, or provide him a bond hearing pursuant to 8 U.S.C. § 1226(a) under the standards set out in *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). Doc. No. 6.

### B. Petitioner's November 26, 2025 Bond Hearing

On November 26, 2026, IJ Nina Froes held a bond hearing for Mr. Quinonez Perez pursuant to this Court's order.[3] The IJ denied bond, finding DHS had met its burden to show Mr. Quinonez Perez was a danger by clear and convincing evidence through its submission of the October 2025 police report. Exh. 1.

### C. Petitioner's March 2, 2026 Bond Hearing

After Mr. Quinonez Perez's sole charge was dismissed on February 18, 2026, Mr. Quinonez Perez, again through *pro bono* counsel, requested a new bond hearing before the IJ based on a material change in his circumstances. *See* 8 C.F.R. § 1003.19(e). IJ Luciana Dubuc held a bond hearing for Mr. Quinonez Perez on March 2, 2026. To meet its burden, DHS submitted the same evidence that it had previously filed, namely the Form I-213 and the Chelsea Police Report from the October 2025 arrest. Exh. 4 (DHS Evidence). To rebut DHS's evidence, Mr. Quinonez Perez

---

[2] Judge Stearns issued an electronic order finding "that multi-petition joint habeas petitions are improper vehicles for individual petitioners." *Alcantara Lugo*, No. 1:25-cv-13296-RGS, Doc. No. 9 (D. Mass. Nov. 18, 2025).

[3] A transcript of the November 26, 2025 bond hearing is available upon the Court's request.

submitted a sworn personal declaration, a copy of the online docket from MassCourts[4] showing that his sole charge was dismissed, <u>ten</u> letters of support from family and friends (including from his U.S. citizen aunt and sponsor, his wife, and his son), his U.S. citizen daughter's birth certificate, and photographs of him and family. Exh. 5, Tabs A-O.

At the hearing, DHS argued that the now-dismissed charge did not constitute a material change in circumstances. Exh. 3 at 2. Additionally, DHS argued that Mr. Quinonez Perez is a danger because of the dismissed charge. Again, DHS relied solely on the uncorroborated facts in the police report and argued that the court should "consider the fact that [the charge was] dismissed for lack of prosecution and not following an adjudication on the merits of the case." Exh. 3 at 2. The IJ agreed with DHS and found that they met their burden of proving that Mr. Quinonez Perez is a danger by clear and convincing evidence, despite finding that the dismissal constituted a material changed circumstance.  Exh. 3 at 3-4. The IJ relied on DHS's reasoning that the case was dismissed for "lack of prosecution" and the unsubstantiated allegation in the police report that Mr. Quinonez Perez's son got into the middle of his parents. *Id.*

III.    <u>ARGUMENT</u>

A.  <u>This Court has Jurisdiction to Decide Petitioner's Motion to Enforce.</u>

Federal district courts have jurisdiction to order the release of any person who is held in custody in violation of the laws or Constitution of the United States. 28 U.S.C. § 2241(c). "A district court retains jurisdiction to 'review compliance with its earlier order conditionally granting habeas relief,'" and federal courts have repeatedly considered whether an immigration judge complied with its prior order requiring that the immigration judge hold a constitutionally adequate

---

[4] MassCourts is the Massachusetts Trial Court Case Access. *See* https://www.masscourts.org/ eservices/home.page.2 It is not an official record of the court, but can be used to look up case information. *Id.*

4

bond hearing. *See, e.g.*, *Lopez Perez v. Wesling*, No. 26-12268-IT, Doc. No. 16 (D. Mass Aug. 6, 2026) (finding IJ Dubuc improperly applied the burden of proof and failed to consider alternatives to detention); *De Los Angeles Carela v. Wesling*, No. 26-12873-NMG, Doc. No. 6 (D. Mass. July 17, 2026) (finding IJ Dubuc's reasoning was arbitrary and capricious because her logic was unclear from the record); *Alcantara Guerrero v. Wesling*, No. 26-10928-JEK, Doc. No. 26 (D. Mass July 2, 2026) (finding IJ Dubuc improperly applied the burden of proof and failed to consider alternatives to detention); *Zamora Luna v. Moniz*, 1:26-cv-12190-JEK, Doc. No. 15 (D. Mass June 29, 2026) (same); *Slander Mourao v. Moniz*, No. 26-11443-AK, Doc. No. 22 at 5 (D. Mass June 25, 2026) (same); *Atariguana-Buele v. Warden*, 26-12168-LTS, Doc. No. 25 (D. Mass June 25, 2026) (finding IJ Dubuc improperly applied the burden of proof when finding petitioner a danger); *Vacas Espinoza v. Moniz*, No. 26-11472-DJC, Order No. 15 (D. Mass. June 17, 2026) (finding IJ Dubuc improperly applied the burden of proof and that her reasoning was so arbitrary and capricious so as to violate due process); *Martinez Aguilar v. McDonald*, 25-13638-LTS, Doc. No. 12 (D. Mass June 5, 2026) (finding IJ Dubuc unconstitutionally misapplied the dangerousness standard); *Reyes Vargas v. Warden*, No. 26-11740-AK, Doc. No. 18 (D. Mass May 22, 2026) (finding IJ Dubuc unconstitutionally misapplied the burden of proof); *Palma Aguirre v. Moniz*, 26-11927-LTS, Doc. No. 16 (D. Mass May 21, 2026) (finding IJ Dubuc unconstitutionally misapplied the dangerousness standard); *Montesinos Olivar v. Wesling*, No. 26-11102-ADB, Doc. No. 14 (D. Mass. May 7, 2026) (finding the IJ's bond denial to be so arbitrary that it violated the fundamental tenets of due process); *Loja Loja v. Moniz*, No. 26-11826-MJJ, Doc. No. 10 at 5-6 (D. Mass. April 28, 2026) (finding the evidence used to deny the petitioner bond was insufficient as a matter of law); *Costa v. McDonald*, No. 25-CV-13469-AK, 2026 WL 371198 at *4 (D. Mass. Feb. 10, 2026) (finding due process requires the Government to address why alternatives to

detention would not suffice in bond proceedings); *Miti v. Moniz*, No. 26-11327-BEM, 2026 WL 884639 (D. Mass. Mar. 31, 2026) (finding the IJ unconstitutionally misapplied the burdens of proof and drew unreasonable inferences when denying bond); *Garcia v. Hyde*, 817 F. Supp. 3d 112, 119 (D.R.I. Dec. 3, 2025)  (finding IJ violated due process when they failed to give reasoned consideration to the bond evidence as a whole and adequately explain their reasoning). *see also Mendez Trigueros v. Guardian*, No. 1:26-cv-205, Doc. 13, at 5 (E.D. Va. Feb. 18, 2026); *Picado v. Hyde*, No. 1:26-CV-065-JJM-PAS, 2026 WL 352691, at *1 (D.R.I. Feb. 9, 2026); *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227 (W.D.N.Y. 2019).

Courts in the First Circuit routinely order immediate release or new bond hearings in cases where it has concluded that a noncitizen was denied bond "because the Immigration Court failed to apply the correct legal standards." *Gomes v. Hyde*, 804 F. Supp. 3d. 265, 278 (D. Mass. 2025); *see e.g. Hernandez-Lara*, 10 F.4th at 46; *Doe v. Tompkins*, 11 F. 4th 1, 2 (1st Cir. 2021); *Brito v. Garland*, 22 F.4th 240, 256-57 (1st Cir. 2021); *Li,* No. 1:26-cv-11601-BEM; *Mijango Velasco v. Wesling*, No. 1:26-cv-11355-LTS, Doc. No. 19 (D. Mass. Apr. 24, 2026); *Miti v. Moniz*, No. 26-11327-BEM, 2026 WL 884639 (D. Mass. Mar. 31, 2026); *Costa v. McDonald,* No. 25-CV-13469-AK, 2026 WL 371198 (D. Mass. Feb. 10, 2026).

It is true that federal courts generally do not have jurisdiction to review "discretionary judgment[s] regarding the application of" 8 U.S.C. § 1226. 8 U.S.C. § 1226(e); *see also Demore v. Kim*, 538 U.S. 510, 518–22 (2003). Notwithstanding 8 U.S.C. § 1226(e), federal courts may consider three types of arguments. First, courts may consider habeas petitions arguing that a detainee's due process rights were violated. *See Mayancela v. FCI Berlin*, No. 25-cv-348-LM-TSM, 2025 WL 3215639, at *5 (D.N.H. Nov. 18, 2025) ("Although the court may not review the IJ's discretionary judgment, the IJ does not have discretion to fail to apply the burden of proof that

6

due process requires.") (citing *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 176 (D.D.C. 2015)); *Miti*, 2026 WL 884639 at *4 ("The Court's task is therefore simply to ascertain whether the immigration court's discretion was exercised in a manner consistent with due process"); *see also Massingue v. Streeter*, No. 19-cv-30159, 2020 WL 1866255, at *3 (D. Mass. Apr. 14, 2020) ("[A] district court retains jurisdiction to review compliance with its earlier order conditionally granting habeas relief.") (quoting *Diaz Ortiz*, 384 F. Supp. 3d at 142). Second, courts may review whether "the exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process." *See Diaz Ortiz*, 384 F.Supp.3d at 144 (citation omitted). Third, courts may also consider petitions arguing that the type of evidence presented at a bond hearing "'could not – as a matter of law – have supported' the immigration judge's decision to deny bond." *Id*. at 143 (quoting *Hechavarria*, 358 F. Supp. 3d at 240); *see also Henry v. INS*, 74 F.3d 1, 4 (1st Cir. 1996) ("Adjudicatory tribunals can exceed grants of discretion – even ringing grants of broad, essentially standardless discretion . . . by attaching weight to a factor that does not appropriately bear on the decision.").

Here, Mr. Quinonez Perez was denied a constitutionally compliant bond hearing because the IJ failed to consider probative evidence, the IJ's exercise of discretion was arbitrary, violating fundamental tenets of due process, and the IJ failed to meaningfully consider less restrictive alternatives to detention. This "is precisely the type of constitutional claim that belongs in federal court." *Higiro v. Nessinger*, No. 26-cv-00105-JJM-AEM, Doc. 8 at 9 (D.R.I. Mar. 13, 2026); *see also Adegbenro v. Nessinger*, No. 1:26-cv-00110-MSM-AEM, Doc. No. 15, at 2 (D.R.I. Apr. 1, 2026) ("The Petitioner raises a constitutional due process challenge to the legal sufficiency of the evidence supporting his continued detention, not merely a disagreement with the IJ's discretionary weighing of the record.").

**B. Petitioner Is Not Required To Exhaust Administrative Remedies Because He Is Suffering Irreparable Harm While Detained.**

This Court has consistently held that similarly situated petitioners are not required to exhaust administrative remedies when they are currently detained by Respondents and are subject to irreparable harm. *See Costa,* 2026 WL 371198 at *3 (quoting *Gomes*, 804 F.Supp.3d at 272); *Loja Loja v. Moniz*, No. 26-11826-MJJ, Doc. No. 10 at 3-4 (D. Mass. Apr. 28, 2026).

Indeed, "this case is governed by the 'more permissive' common-law exhaustion standard," where the Court "may find exhaustion to be unnecessary where" (1) "'a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim,'" *Garcia v. Hyde,* No. 25-CV-585-JJM-PAS, 2025 WL 3466312 at *6 (D.R.I. Dec. 3, 2025) (quoting *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997)); (2) when the "legal question is fit for resolution and delay means hardship," *id.* (quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000)); and/or (3) "if a substantial doubt exists about whether the agency is empowered to grant meaningful redress," *id.* (quoting *Portela-Gonzalez*, 109 F.3d at 77). *See also Loja Loja*, No. 26-11826-MJJ at 4. Mr. Quinonez Perez is subject to all three of these conditions.

Mr. Quinonez Perez is being irreparably harmed by his ongoing unlawful detention without a constitutionally compliant bond hearing. *See Loja Loja*, No. 26-11826-MJJ at 4-5; *Romero v. Hyde*, No. 25-CV-11631, 2025 WL 2403827, at *6–8 (D. Mass. Aug. 19, 2025) (no exhaustion required because "[o]bviously, the loss of liberty is a . . . severe form of irreparable injury" (internal quotation marks omitted)); *Flores Powell v. Chadbourne*, 677 F. Supp. 2d 455, 463 (D. Mass. 2010) (declining to require administrative exhaustion, including because "[a] loss of liberty may be an irreparable harm"); *cf. Brito v. Garland*, 22 F.4th 240, 256 (1st Cir. 2021) (noting "'[e]xhaustion might not be required if [the petitioner] were challenging her incarceration . . . or

8

the ongoing deprivation of some other liberty interest'") (citation omitted). To be sure, district courts have repeatedly held that administrative exhaustion is not required where the petitioner is actively detained in ICE custody. *See, e.g., Miti*, 2026 WL 884639, at \*5; *Adegbenro*, No. 1:26-cv-00110-MSM-AEM, at 2-3; *Costa,* 2026 WL 371198 at \*3; *Romero v. Hyde*, 795 F. Supp. 3d 271, 280 (D. Mass. 2025).

Further, requiring Mr. Quinonez Perez to await a decision from the BIA would result in an extreme delay and significant hardship. As multiple courts within this Circuit have noted, "the average processing time for bond appeals exceeded 200 days in 2024," indicating Mr. Quinonez Perez would "likely face several additional months of detention while awaiting a BIA decision." *Garcia v. Hyde*, 2025 WL 3466312 at \*6 (waiving exhaustion because of delay associated with BIA appeal); *Sampiao v. Hyde*, 799 F. Supp. 3d 14, 25–26 (D. Mass. 2025) (holding 200 day average BIA processing time would constitute "a prolonged loss of liberty [that] would, in these circumstances, constitute irreparable harm"); *Gomez*, 804 F. Supp. 3d at 272–73 (same); *see also Picado v. Hyde*, No. 26-CV-065-JJM-PAS, 2026 WL 352691 at \*6 (D.R.I. Feb. 9, 2026) ("This loss of liberty is further compounded due to the considerable amount of time—up to six months, in many cases—it takes for the BIA to decide bond appeals.").

Additionally, the Immigration Court lacks jurisdiction to adjudicate the constitutional claims raised in this Petition and any attempt to raise such claims would be futile. *See Mijango Velasco*, 2026 WL 1960710  at 7 n.3; *Flores-Powell*, 677 F. Supp. 2d at 463 (holding "exhaustion is excused by the BIA's lack of authority to adjudicate constitutional questions and its prior interpretation" of the relevant statute); *Figueroa v. McDonald*, 680 F. Supp. 3d 18, 22 (D. Mass. 2018) (holding exhaustion not required where petitioner challenged the constitutionality of a bond hearing, which "'falls outside the scope of § 1226(e)' because it is not a matter of the IJ's

9

discretionary judgment") (citing *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)); *Matter of Cruz de Ortiz*, 25 I&N Dec. 601, 605 (BIA 2011) ("[N]either we nor the Immigration Judges have authority to rule on the constitutionality of the statutes we administer.").

Further, Mr. Quinonez Perez already pursued administrative remedies available to him by requesting a new bond hearing, pursuant to 8 C.F.R. § 1003.19, after the charge was dismissed. That effort was futile.

**C. Petitioner Should Be Released Because He Did Not Receive A Bond Hearing That Complied With Due Process As Required By This Court.**

**1. The IJ did not properly allocate burdens of proof in compliance with *Hernandez-Lara*, as required by this Court.**

In a bond hearing, due process requires that the government prove either by clear and convincing evidence that the noncitizen poses a danger to the community or by a preponderance of the evidence that the noncitizen poses a flight risk. *Hernandez-Lara*, 10 F.4th at 41; *see also Brito*, 22 F.4th at 246; *Tompkins*, 11 F. 4th at 2. Here, the government did not meet this burden, and the IJ improperly denied bond despite the government's failure to demonstrate by clear and convincing evidence that Respondent is a danger to the community.

The District Court has authority to enforce its decision where the petitioner has demonstrated the IJ has failed to properly allocate the burden of proof, either by pointing to the language of the IJ's order, or by showing that the evidence itself, as a matter of law, could not have supported the IJ's decision to deny bond. *Diaz Ortiz*, 384 F.Supp.3d at 143 (citing *Hechavarria*, 358 F. Supp. 3d at 240); *see also Rosa v. Garland*, 114 F.4th 1, 14-15 (1st Cir. 2024) (finding jurisdiction to review immigration agency decisions concerning whether it followed binding precedent).

*a. The plain language of the IJ's order denying bond is deficient on its face.*

10

The IJ's written order simply states, "Danger to the community." Exh. 2. It includes no legal reasoning, application of the facts, or indication that the IJ considered alternatives to detention. *See Mijango Velasco*, No. 26-11355-LTS at 2. The application of legal standards requires more than just a statement; the legal standard must be *meaningfully* applied. *Akinsanya v. Garland*, 125 F.4th 287, 297 (1st Cir. 2025) ("Merely stating the proper standard does not discharge the obligation to correctly apply the standard"); *see Slander Mourao*, No. 26-11443-AK, Doc. No. 22 at 6 (citing *Akinsanya* for this principle when finding that IJ Dubuc had failed to apply the standard); *Vacas Espinoza*, No. 26-11472-DJC, Doc. No. 15 (same).

### b. *The IJ's oral decision makes clear that she did not hold DHS to their burden of proof.*

The IJ's oral decision further makes clear that she did not properly allocate the burdens of proof and improperly relied on evidence that cannot support a denial of bond. *See* Exh. 2 at 3-4. Even where an IJ recites the correct standard, the fact that they did not "point[] out factors typically significant in determining dangerousness and flight risk, such as the person's ties to the community, employment history, criminal records, and any history of flight from law enforcement or past failures to appear for court proceedings" indicates a failure to properly apply that burden. *Mukendi Mbiya v. Doe*, No. 26-00467-JL-TSM, Opinion No. 2026 DNH 094 (D.N.H. July 21, 2026) (citing *Mayancela*, 2025 WL 3215638, at *6). To be sure, many equivalent requests for relief from this Court have been granted for petitioners where IJ Dubuc articulated the correct standard in bond proceedings without properly applying it. *See, e.g.*, *Alcantara Guerrero*, No. 26-10928-JEK, Doc. No. 26; *Slander Mourao*, No. 26-11443-AK, Doc. No. 22 at 8; *Vaca Espinoza*, No. 26-11472-DJC, Doc. No. 15; *Reyes Vargas*, No. 26-11740-AK, Doc. No. 18, 2026 WL 1453510 at *4.

In her oral decision, the IJ stated that there was a material change in Respondent's circumstances because the charge had been dismissed, yet found that the allegations in the police report supported a finding of dangerousness. *Id.*  As a matter of law, the police report alone could not have supported the denial of bond. An IJ "may not give 'substantial weight' to a police report in the absence of 'a conviction or corroborating evidence of the allegations contained' in the report." *Rosa*, 114 F.4th at 17 (quotations omitted); *Maurice v. Bondi*, 154 F.4th 14, 22 (1st. Cir. 2025); *see also Diaz Ortiz v. Garland*, 23 F.4th 1, 22 (1st Cir. 2022) (finding some law enforcement sources fail to contain "reasonable, substantial, and probative evidence") (citations omitted). In the context of a bond hearing, another session of this Court has found that "[a]n IJ must determine that the facts in any police report it relies upon are both 'reliable and that its use would not be fundamentally unfair.'" *Loja Loja*, No. 26-11826-MJJ at 5 (quoting *Maurice,* 154 F.4th at 20). Where there is no indication that an IJ has done so, and where the facts in the law enforcement document are in dispute at the bond hearing, that document alone is insufficient to meet the government's burden of proof. *Id*.

Outside of the First Circuit, other district courts agree that an uncorroborated police report is not clear and convincing evidence of dangerousness. *Diaz-Calderon v. Barr*, 535 F. Supp. 3d 669, 679-80 (E.D. Mich. 2020) (finding that alleged conduct in a police report for driving under the influence was not clear and convincing evidence of dangerousness); *Ortega-Rangel v. Sessions*, 313 F.Supp.3d 993,1004-05 (N.D. Cal. 2018) (stating that the mere fact of detainee's arrest and pending criminal charge was not "probative and specific;" thus, IJ's sole reliance on such information to deny bond violated due process); *Reyes v. Wolf*, 2:19-cv-02086-GMN-EJY, 2020 WL 2308075 (D. Nev. May 8, 2020) (finding that criminal charges for robbery, discharging

12

firearm, attempted murder and others that were eventually dismissed could not constitute clear and convincing evidence of dangerousness to deny bond).

Counsel for Mr. Quinonez Perez raised the holding in *Rosa v. Garland* at the bond argument; the IJ then instead based her denial on the police report despite the dismissal because the case was "dismissed for lack of prosecution." Exh. 2 at 3. The IJ failed to make any finding regarding undersigned counsel's argument that there was not enough evidence to sustain the charge against Mr. Quinonez Perez.

DHS did not even introduce the evidence of the charge into the record, which further compounded the IJ's error. Instead, counsel only submitted a police report, with no evidence that charges were ever filed in court. *See* Exh. 4, DHS evidence. This, without further evidence or corroboration, is insufficient as a matter of law to support DHS's burden of demonstrating dangerousness by <u>clear and convincing evidence</u>. *See Miti*, 2026 WL 884639 at *7 (finding police report not clear and convincing evidence despite arresting officer and prosecutor having probable cause to arrest); *see also Adegbenro,* 1:26-cv-00110-MSM-AEM, Doc. No. 15 at 2 (third party account of arrest and court case summaries showing pending charges could not as matter of law constitute clear and convincing evidence of dangerousness); *Loja Loja*, 1:26-cv-11826-MJJ at 5 ("reliance on an I-213 – without corroborating the facts it contains and in the face of contrary evidence from both Petitioner and his wife– does not satisfy the evidentiary burden required to deny bond."); *Alvarez Puerta v. Nessinger*, 1:25-cv-108-JJM-AEM (D.R.I. June 12, 2025) (uncorroborated police report cannot alone be "clear and convincing evidence sufficient for a finding of dangerousness."); *Rosa Pineda v. Nessinger*, No. 1:25-CV-522-MSM-AEM, 2025 WL 3267328, at *1 (D.R.I. Nov. 24, 2025) (same).

The IJ did not address the substantial evidence submitted by Mr. Quinonez Perez to counter DHS's dangerousness argument. First, the IJ made no mention of the copious evidence of safe and responsible behavior by the Mr. Quinonez Perez over the last 7 years. Exh. 2 at 3-4. Mr. Quinonez Perez submitted affidavits from his wife, his son, and eight additional letters of support from his family, friends, pastor, and employer in the United States. *See* Exh. 5. His partner attested to Mr. Quinonez Perez's status as a trusted and kind man, who creates a safe environment. *Id*. DHS's evidence did not contradict any of Mr. Quinonez Perez's evidence, and the IJ's decision did not address how or whether she evaluated Mr. Quinonez Perez's evidence to counter DHS's dangerousness argument. Nevertheless, the IJ concluded that the police report constituted clear and convincing evidence of dangerousness. *See* Exh. 1, 2.

> c.   ***The IJ did not address the evidence submitted by Mr. Quinonez Perez.***

The IJ did not indicate that she evaluated the sworn declarations of Mr. Quinonez Perez or his family members which contradicted, or rebut, the allegations contained in the police report. Mr. Quinonez Perez's declaration describes how he and his wife, Elvia, got into a verbal argument about the division of labor in their house. Exh. 5, Tab A. He stated that the neighbors called the police. *Id.* Elvia wrote about her and Mr. Quinonez Perez's relationship, wherein they have known each other since 2009 and married since 2013. In the twelve years of their marriage, she says he is a "kind, respectful, and responsible man" and "creates a safe and supportive environment through communication." Exh. 5, Tab F. She further states that she does not believe he is a danger and that the night in question was a misunderstanding. *Id.* Mr. Quinonez Perez's son wrote to him, "I know this time is hard but don't give up and I'm here waiting for all this to pass so we can be together again. I miss you a lot, I miss your hugs." Exh. 5, Tab G. The IJ notably fails to mention even the presence of these letters, never mind the inconsistencies between them and the police report.

"The clear and convincing standard is a demanding standard to satisfy." *United States v. Anonymous Appellant*, 85 F.4th 576, 580 (1st Cir. 2023). Clear and convincing evidence "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Cruzan by Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 285 n.11 (1990) (quotation omitted). Here, the evidence Mr. Quinonez Perez submitted provides a different narrative than that in the police report, and therefore the police report alone can no longer be sufficient to meet DHS's burden of demonstrating the facts of the allegations contained there by "clear and convincing" evidence. *See Miti*, 2026 WL 884639 at *8 (finding DHS failed to meet burden when "on the record before the Court—the same record that was before the immigration judge—one could not reasonably 'come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'") (quoting *Cruzan,* 497 U.S. at 285 n.11).

DHS demonstrably failed to meet its burden of proving that Mr. Quinonez Perez is a danger to the community by clear and convincing evidence. The evidence DHS submitted was insufficient as a matter of law to support this conclusion, and the IJ's reliance on such insufficient evidence in light of contradictory evidence submitted by Mr. Quinonez Perez violated Mr. Quinonez Perez's due process rights.

####    2.   The IJ's reliance solely on an unproven, dismissed charge was so arbitrary that it rendered the proceedings fundamentally unfair, thus violating fundamental tenets of due process.

A bond hearing is individualized and fundamentally unfair when it is "so arbitrary that it would offend fundamental tenets of due process." *Vasquez-Rosario v. Noem*, No. 25-7427, 2026 WL 395711, at *2 (E.D.Pa. Feb. 12, 2026) (quotation omitted); *see also Zheng v. Rokosky*, No. 26-cv-01689, 2026 WL 800203 at *4 (D.N.J. Mar. 23, 2026). The IJ must consider all relevant

15

factors in making a determination whether to grant bond; placing undue weight on one factor while failing to take other probative evidence into account renders her decision arbitrary and violates due process. *See Garcia v. Hyde,* 2025 WL 3466312 at \*1 ("The IJ must give 'reasoned consideration to the evidence as a whole, [make] supportable findings, and adequately explain[ ] [their] reasoning.'") (quotation omitted); *I.G.S. v. Nessinger*, No. 25-cv-339-MRD-PAS, slip op. at 2-4 (D.R.I. Sept. 12, 2025).

As addressed *supra*, Mr. Quinonez Perez's declaration explaining the events surrounding his arrest, sworn declarations from two family members, evidence of no prior criminal history in six years of residence in the United States, and multiple character references juxtaposed DHS's submission of the police report discussing one arrest, which described a chaotic scene in which Mr. Quinonez Perez is alleged to have gotten into an argument with his wife. While the allegations are troubling, the police report alleges no other violent conduct and the charge was dismissed. DHS produced no additional evidence to prove Mr. Quinonez Perez is a danger to others or corroborating the allegations underlying the dismissed charge. The IJ did not mention any of the evidence produced by Mr. Quinonez Perez which contradicted the police report and spoke to Mr. Quinonez Perez's lack of dangerousness. *See* Exh. 3. The IJ effectively determined that DHS could carry its burden of clear and convincing evidence of dangerousness based on this unproven and dismissed charge no matter what quantity of evidence of safe and responsible behavior the Mr. Quinonez Perez produced. This decision can only be described as so arbitrary that it violated Mr. Quinonez Perez's due process rights. *See Diaz Ortiz*, 384 F.Supp.3d at 144; *Mijango Velasco*, 1:26-cv-11355-LTS, at 6; *Li*, No. 26-cv-11601-BEM.

Further, the IJ's reliance solely on an unproven charge to render an individual detained throughout their immigration proceedings—a period which could last several months, possibly

16

years—is a violation of due process. Mr. Quinonez Perez "has not been convicted of the offense beyond a reasonable doubt." *Demore*, 538 U.S. at 513. Mr. Quinonez Perez submitted evidence contradicting his conduct described in the police report, and thus evidence of his guilt—and consequently, his dangerousness—is not "clear and convincing." *See Hernandez-Lara*, 10 F.4th at 41. Because this case was dismissed, the IJ's reliance solely on this unproven charge without considering additional evidence is fundamentally unfair. *See Zheng*, 2026 WL 800203 at \*6.

This Court has already found that Mr. Quinonez Perez's detention without constitutionally adequate procedural protections violates due process. DOC. No. 16 at 10. Here, the bond hearing held by the immigration court failed to provide those procedural protections. Thus, Mr. Quinonez Perez's continued detention is unlawful.

### 3. The IJ failed to consider alternatives to detention in her analysis of flight risk.

An IJ's failure to consider alternative conditions of release in a bond determination is a violation of an individual's due process rights. *See Costa,* 2026 WL 371198 at \*3; *Mijango Velasco*, No. 1:26-cv-11355-LTS, at 5; *Higiro*, No. 26-cv-00105-JJM-AEM, at 16–18; *Brito v. Barr*, 415 F. Supp. 3d 258, 267-71 (D. Mass. 2019), aff'd in part, vacated in part, 22 F.4th 240 (1st Cir. 2021); *Reid v. Donelan,* 390 F. Supp. 3d 201, 225 (D. Mass. 2019).

Imposing continued civil detention, which is potentially prolonged indefinitely, while failing to consider less restrictive alternatives to detention violates Mr. Quinonez Perez's constitutional rights. Mr. Quinonez Perez is currently detained at Plymouth County Correctional Facility, alongside criminal inmates, despite never having been convicted of a crime. *See Hernandez-Lara*, 10 F.4th at 28, quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2nd Cir. 2020) ("[Petitioner] was not 'detained'; he was, in fact, incarcerated under conditions indistinguishable from those imposed on criminal defendants sent to prison following convictions

17

for violent felonies and other serious crimes."). If a less restrictive alternative to detention is available, it should be considered.

Although alternatives to detention like GPS are usually considered in the evaluation of flight risk, the First Circuit has commented on the relevance of alternatives to detention in dangerousness determinations as well. In *Doe v. Tompkins*, the First Circuit affirmed a district court order that required IJs to "consider alternative methods to ensure the safety of the community and [the petitioner's] future appearances like GPS monitoring," declining to disturb that portion of the ruling only because neither party raised it on appeal. *Doe v. Tompkins,* No. 18-12266, 2019 WL 8437191, at *2 (D. Mass. Feb. 12, 2019), aff'd, 11 F.4th 1 (1st Cir. 2021).

In *Brito v. Garland*, the First Circuit, although vacating the district court decision on administrative exhaustion grounds, observed that "it is easy to see how conditions of release might shape an IJ's determination as to whether a noncitizen poses a flight risk or danger to the community," and "[i]f due process requires an IJ to consider alternatives to detention before making a determination about dangerousness or risk of flight, the IJs in the petitioners' cases might well have reached different decisions as to … whether to release the petitioners on bond." *Brito v. Garland*, 22 F.4th 240, 254-55 (1st Cir. 2021).

Since these First Circuit decisions, several district courts have found that an IJ's failure to consider alternatives to detention violates the petitioner's due process rights. *See, e.g.*, *Costa,* 2026 WL 371198, at *3; *Mijango Velasco*, 1:26-cv-11355-LTS, at 5; *Higiro*, No. 26-cv-00105-JJM-AEM, at 16–18. In *Higiro*, the court explained that "[d]etention must bear a 'reasonable relation' to the purpose for which the individual is detained," and that two governmental interests legitimately advanced by immigration detention are (1) ensuring the noncitizen's appearance at future proceedings and (2) preventing danger to the community." No. 26-cv-00105-JJM-AEM at

18

16–18 (quoting *Zadvydas*, 533 U.S. at 690). Thus, requiring an IJ to consider alternatives to detention when considering dangerousness "helps to ensure that detention is not arbitrarily imposed and that it bears a reasonable relation to the Government's interests." *Id.*

In the present case, the IJ denied bond after finding Mr. Quinonez Perez was a danger to the community without any consideration of whether alternatives to detention, such as electronic monitoring, in-person reporting to ICE, or other conditions of supervised release, could adequately mitigate whatever potential danger Mr. Quinonez Perez might have posed by virtue of his police report. This failure to consider alternatives to detention violated Mr. Quinonez Perez's due process rights, and he is entitled to relief.

## IV.    CONCLUSION

WHEREFORE, Mr. Quinonez Perez respectfully asks that the Court enforce its November 19, 2025 order and release him, as the government has not provided a bond hearing that complied with the requirements of the Court's order and the U.S. Constitution. In the alternative, Mr. Quinonez Perez asks for the District Court, pursuant to its equitable powers, to release Mr. Quinonez Perez on alternatives to detention such as GPS monitoring, hold its own bond hearing, or grant any other relief that the court sees fit.

Respectfully submitted,

*/s/ Julia Ciachurski*
Julia Ciachurski
BBO# 709052
PAIR Project
98 N. Washington Street, Suite 106
Boston, MA 02114
(949) 610-3633; jciachurski@pairproject.org

*Pro Bono Counsel for Petitioner*

Dated: June 2, 2026

19

## <u>CERTIFICATE OF SERVICE</u>

I, Julia Ciachurski, certify that on this 2nd day of June, 2026, I caused a copy of the foregoing Petition to be served on Respondents' counsel via the CM/ECF. platform.


Dated: June 2, 2026                    */s/ Julia Ciachurski*
                                       Julia Ciachurski

20