UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HARLIN QUINONEZ PEREZ,<br><br>Petitioner,<br><br>v.<br><br>DAVID WESLING et al.,<br><br>Respondents. | Civil Nos. 25-13445-LTS, 26-13317-LTS |

MEMORANDUM AND ORDER ON MOTION TO ENFORCE AND
PETITION FOR WRIT OF HABEAS CORPUS

September 16, 2026

SOROKIN, J.

Harlin Quinonez Perez, a citizen of Guatemala who is presently in immigration detention, challenges the constitutional adequacy of a March 2, 2026, bond hearing through two mechanisms: a motion to enforce the Court's prior order granting his first habeas petition, and a second habeas petition. For the reasons explained below, his motion to enforce is DENIED, and his second habeas petition is ALLOWED to the extent described in this Order.

I. BACKGROUND

Quinonez Perez entered the United States without inspection in 2019. Petition ¶ 11, Quinonez Perez v. Wesling (Quinonez Perez I), No. 25-cv-13445-LTS (D. Mass. filed Nov. 18, 2025), Dkt. No. 1. He moved to Chelsea, Massachusetts, where his wife (who has a pending asylum application and employment authorization) and their eldest child later joined him. Exhibit 5 to Memorandum in Support of Motion to Enforce Judgment at 5, 26, 28, Quinonez Perez I, No. 25-cv-13445-LTS, Dkt. No. 9-5 [hereinafter "Quinonez Perez's IJ Submission"]. Quinonez Perez and his wife also have a United States–citizen infant daughter. Id. at 33.

On October 19, 2025, Quinonez Perez was arrested by the Chelsea Police Department and charged with assault and battery for the alleged assault of his wife. Id. at 9. Officers responded to a reported domestic disturbance (called in by a neighbor); when the officers arrived at the home, Quinonez Perez was waiting for them on the front porch, and they observed that his wife, the alleged victim, appeared to have been crying. Id. at 5; Exhibit 4 to Memorandum in Support of Motion to Enforce Judgment at 11, Quinonez Perez I, No. 25-cv-13445-LTS, Dkt. No. 9-4 [hereinafter "Government's IJ Submission"]. According to the police report, Quinonez Perez's wife told the officers that "she didn't want to call the police," that "her husband had been hitting her for the last month or so" and that, on that night, "he allegedly struck her on the face with force" and "pulled her hair." Government's IJ Submission, supra, at 11. The report states that, before the assault, Quinonez Perez's wife had confronted him about his vaping near their infant daughter, and that their son (then ten years old) "intervened as he attempted to separate his father from his mother to prevent any further aggression."[1] Id. The report does not indicate whether the officers observed any injuries. Id. Quinonez Perez's wife declined medical attention, but she sought and received an emergency restraining order. Id.

Hours after his arrest, Quinonez Perez was released on bail. Id. He was then picked up by ICE. Id. at 4. He has been detained at the Plymouth County Correctional Facility ever since. See Quinonez Perez's IJ Submission, supra, at 5.

Quinonez Perez filed a petition for writ of habeas corpus challenging his immigration detention.[2] On November 19, 2025, the Court allowed Quinonez Perez's petition and ordered

---

[1] As described below, Quinonez Perez offers evidence disputing or contextualizing the allegations in the police report.

[2] The Court presumes familiarity with the procedural background of Quinonez Perez's first habeas petition, which it recounted in its prior order. See Order at 1–2, Quinonez Perez I, No. 25-cv-13445-LTS, Dkt. No. 6.

the respondents to release Quinonez Perez within seven days unless they first provided him with a bond hearing under 8 U.S.C. § 1226(a) that adhered to the burden-allocation standard set out in the First Circuit's decision in Hernandez-Lara v. Lyons. Order at 3 & n.2, Quinonez Perez I, No. 25-cv-13445-LTS, Dkt. No. 6.

Pursuant to the Court's order, on November 26, a bond hearing was held before an immigration judge ("IJ"). See Exhibit 1 to Memorandum in Support of Motion to Enforce Judgment at 1, Quinonez Perez I, No. 25-cv-13445-LTS, Dkt. No. 9-1. At the November 26 hearing, IJ Nina Froes denied bond after concluding the respondents had established, by clear and convincing evidence, that Quinonez Perez posed a danger to the community.[3] Id. The audio recording of this hearing demonstrates that IJ Froes's conclusion rested primarily on the police report and then-pending assault-and-battery charge. See Exhibit A to Opposition, pt. 1, at 10:00–10:50, Quinonez Perez I, No. 25-cv-13445-LTS, Dkt. No. 13-1.

On February 18, 2026, Quinonez Perez's sole charge was dismissed for lack of prosecution. See Quinonez Perez's IJ Submission, supra, at 9–10. On the record before the Court, Quinonez Perez has no other criminal history.

After his criminal charge was dismissed, Quinonez Perez requested a new bond hearing from the IJ, arguing that his circumstances had materially changed. See, e.g., Exhibit B to Opposition, pt. 3, at 01:05–01:45, Quinonez Perez I, No. 25-cv-13445-LTS, Dkt. No. 13-2 [hereinafter "Recording of March 2 Bond Hearing"]; see also 8 C.F.R. § 1003.19(e) ("After an initial bond redetermination, an alien's request for a subsequent bond redetermination . . . shall

[3] At the bond hearing, IJ Froes also found Quinonez Perez posed a risk of flight. Exhibit A to Opposition, pt. 1, at 10:00–11:25, Quinonez Perez I, No. 25-cv-13445-LTS, Dkt. No. 13-1. This finding was not memorialized in her written decision. See Exhibit 1 to Memorandum in Support of Motion to Enforce Judgment at 1, Quinonez Perez I, No. 25-cv-13445-LTS, Dkt. No. 9-1.

be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination."). On March 2, 2026, IJ Luciana Dubuc held a bond hearing, where she (1) determined that the dismissal of Quinonez Perez's sole criminal charge was a material change in circumstances but nevertheless (2) denied bond on "danger" grounds based solely on the same October 2025 police report. See Recording of March 2 Bond Hearing, supra, at 07:50–08:05. This March 2 hearing is the focus of the pending motion and petition.

For the IJ's consideration at the March 2 hearing, the respondents submitted only the October 2025 police report, ICE's records of Quinonez Perez's initial detention, and IJ Froes's prior check-the-box decision. See Government's IJ Submission, supra. Quinonez Perez, by contrast, submitted a sixty-six-page packet in support of his release on bond, which included (1) a declaration from Quinonez Perez; (2) the state-court docket showing his charge had been dismissed; (3) several photos of Quinonez Perez with his wife and children; and (4) ten letters of support, from his wife, eldest child, pastor, employer, and several other relatives, friends, and coworkers, many of which spoke to Quinonez Perez's character. See Quinonez Perez's IJ Submission, supra. In her letter, Quinonez Perez's wife stated that the two have been married since 2013; she knows Quinonez Perez as "a kind, respectful, and responsible man" who "creates a safe and emotionally supportive environment." Id. at 26. She elaborated that she did "not believe [Quinonez Perez] is a danger to others" and that she "wish[ed] ICE had never taken him away." Id. She described the incident that led to Quinonez Perez's arrest and detention as "a one-time thing and mostly a misunderstanding," id., a description in some tension with the police-report narrative. Quinonez Perez's declaration, too, describes the incident somewhat differently from the police report:

> [M]y wife and I got in a verbal argument about tasks and chores in the household. Like most couples and parents to young babies, we were stressed. The neighbors

> called the police. I waited for the police outside and when they arrived, they talked to both me and my wife. They took me to the police station, where I stayed overnight and then was arrested by immigration.
>
> I am so upset by the situation. It is the first time I have ever been arrested by police or any law enforcement. I have never hurt another human being, never mind my wife, and I never would.

Id. at 5.

At the March 2 hearing, the respondents relied exclusively on the October 2025 police report to argue that Quinonez Perez remained a danger to the community and posed a risk of flight. See Recording of March 2 Bond Hearing, supra, at 03:25–04:20. Quinonez Perez's attorney argued there was insufficient evidence to support his criminal charge, that the police report should not be given substantial weight in the IJ's bond determination, and that the conduct that led to his charge was an aberration: in the twelve years that Quinonez Perez and his wife had been married, this was the sole alleged domestic dispute. Id. at 04:25–07:00. The attorney highlighted the letters of support in arguing that Quinonez Perez did not pose a danger to the community or risk of flight. Id. at 04:50–05:30.

Despite finding that the dismissal of the charge represented a changed circumstance entitling him to a new bond hearing, IJ Dubuc nevertheless concluded that, based on their submission of the original police report, the respondents had carried their burden to show Quinonez Perez posed a danger to the community by clear and convincing evidence. She explained, in full:

> The court does find that there's changed circumstances. The prior criminal charges were dismissed and then the habeas order. However, the court still finds that [Quinonez Perez] is a danger to the community and the Department [of Homeland Security] has met its burden by clear and convincing evidence. While I understand that the case has been dismissed, it has been dismissed for lack of prosecution, and the fact that his ten-year-old son had to separate, [Quinonez Perez], to stop, to prevent him from any further aggression as the police report says on his mother, I find that very disturbing and concerning that his ten-year-old son was present

> during everything and he's trying to defend his own mother. So for those reasons I do find [Quinonez Perez] remains a danger to the community and will deny bond.

Id. at 07:50–08:50; Exhibit 3 to Memorandum in Support of Motion to Enforce Judgment at 3–4, Quinonez Perez I, No. 25-cv-13445-LTS, Dkt. No. 9-5. IJ Dubuc's check-the-box written order stated simply: "Danger to the community." Exhibit 2 to Memorandum in Support of Motion to Enforce Judgment at 1, Quinonez Perez I, No. 25-cv-13445-LTS, Dkt. No. 9-2. (The IJ made no express finding on risk of flight.) IJ Dubuc did not acknowledge Quinonez Perez's submissions, and nothing in the record before the Court suggests she considered their contents in making her findings. IJ Dubuc did not discuss any alternatives to detention. Quinonez Perez did not appeal the bond denial to the Board of Immigration Appeals ("BIA"). He is presently detained on the basis of the March 2 denial of bond.

On March 4, 2026, IJ Dubuc denied Quinonez Perez's application for relief from removal and ordered him removed to Guatemala. See Exhibit 4 to Respondents' Response to Habeas Petition, Quinonez Perez v. Wesling (Quinonez Perez II), No. 26-cv-13317-LTS (D. Mass. filed July 28, 2026), Dkt. No. 6-4. Quinonez Perez timely appealed this merits decision to the BIA, where it remains pending. Exhibit 5 to Respondents' Response to Habeas Petition, Quinonez Perez II, No. 26-cv-13317-LTS, Dkt. No. 6-5.

On July 20, 2026, Quinonez Perez filed a second habeas petition on his own behalf. Petition, Quinonez Perez II, No. 26-cv-13317-LTS, Dkt. No. 1. His pro se petition challenges his detention as unconstitutional; he further argues he is not subject to mandatory detention under 8 U.S.C. § 1225.[4] Id. This petition is ripe for resolution.

---

[4] Respondents acknowledge that Quinonez Perez's detention "has been considered under 8 U.S.C. § 1226(a), rather than 8 U.S.C. § 1225, since November 2025." Response at 3–4, Quinonez Perez II, No. 26-cv-13317-LTS, Dkt. No. 6. This concession is made on behalf of, and is binding on, all respondents.

On August 11, 2026, Quinonez Perez (here, represented by counsel) filed a motion to enforce the Court's order allowing his first habeas petition. Motion to Enforce Judgment, Quinonez Perez I, No. 25-cv-13445-LTS, Dkt. No. 8. Quinonez Perez argues the March 2 bond hearing was constitutionally inadequate because (among other things) IJ Dubuc did not properly allocate the burdens of proof, failed to consider all evidence, and failed to consider alternatives to detention. Memorandum in Support of Motion to Enforce Judgment, Quinonez Perez I, No. 25-cv-13445-LTS, Dkt. No. 9. (Although the memorandum makes a passing reference to the November 26 bond hearing, its argument focuses exclusively on the March 2 bond hearing. See generally id.) This motion is also ripe for resolution.

The Court advised the parties that it "intends to resolve the merits of [the second] petition and the pending motion to enforce in [the first petition] together." Quinonez Perez II, No. 26-cv-13317-LTS, Dkt. No. 10. Accordingly, the Court considers the record evidence submitted and arguments advanced in both cases. It turns now to the merits.

## II. DISCUSSION

As the Court has repeatedly stated, "Adjudicating whether to detain or release another person is one of the most serious tasks judges are asked to perform. It requires conscientious review and consideration of all relevant and available information." Atariguana-Buele v. Warden, Plymouth Corr. Facility, No. 26-cv-12168-LTS, 2026 WL 1825934, at *2 (D. Mass. June 25, 2026) (emphasis in original); accord Order at 2–3, Martinez Aguilar v. McDonald, No. 25-cv-13638-LTS (D. Mass. June 5, 2026), Dkt. No. 17; Order at 3, Palma Aguirre v. Moniz, No. 26-cv-11927-LTS (D. Mass. May 21, 2026), Dkt. No. 16; Order at 5, Rogerio Ramos v. Moniz, No. 26-cv-11388-LTS, (D. Mass. Apr. 27, 2026), Dkt. No. 19; Order at 3 n.2, Mijango Velasco v. Wesling, No. 26-cv-11355-LTS (D. Mass. Apr. 24, 2026), Dkt. No. 19. The record before the Court shows that "IJ Dubuc—again—failed to undertake such a review in the manner

the Constitution demands." Atariguana-Buele, 2026 WL 1825934, at *2. Instead, the record shows that she "rested her denial of bond on a few select portions of a single police report—without mentioning, let alone indicating that she had evaluated, [Quinonez Perez's] ample collection of exhibits." Order at 3, Palma Aguirre v. Moniz, No. 26-cv-11927-LTS, Dkt. No. 16; see also id. at 3 n.1 (noting same IJ has repeatedly "found a danger to the community by clear and convincing evidence on the basis of police reports unsupported by witness testimony or other exhibits, even though no charges had led to convictions, while simultaneously giving no consideration at all to fulsome evidence presented by the petitioners seeking bond," rendering bond proceedings "constitutionally deficient"). "As the Court has admonished the respondents before, the Constitution's due process guarantee requires more." Atariguana-Buele, 2026 WL 1825934, at *2.

Quinonez Perez's second habeas petition challenges the constitutionality of his present detention. Petition, Quinonez Perez II, No. 26-cv-13317-LTS, Dkt. No. 1. On the record before the Court, and for much the same reasons articulated in the above-cited orders, Quinonez Perez's present detention results from a constitutionally deficient bond hearing.[5] He is entitled to relief, and his second petition for writ of habeas corpus is ALLOWED.[6]

The procedural history of the present cases, however, warrants different relief from that ordered in the Court's prior cases. In those prior cases, the deficient bond hearing violated a federal court order directing the respondents to release the petitioner by a date certain unless they first provided the petitioner with a constitutional bond hearing. The Court therefore concluded

[5] The Court notes and rejects the respondents' exhaustion argument. Response at 4–5, Quinonez Perez II, No. 26-cv-13317-LTS, Dkt. No. 6.

[6] To the extent Quinonez Perez's petition also seeks a temporary restraining order or preliminary injunction, that request is DENIED AS MOOT in light of the Court's resolution of his petition.

immediate release was required. See, e.g., Atariguana-Buele, 2026 WL 1825934, at *3 ("The relief ordered in this case required the respondents to do one of two things by May 26, 2026: either provide a constitutionally adequate bond hearing, or release Atariguana-Buele. The record establishes that the respondents here did neither . . . . Accordingly, . . . respondents shall release the petitioner immediately . . . ." (citation omitted) (emphasis omitted)).

Here, however, Quinonez Perez does not meaningfully argue that the November 25 bond hearing, conducted pursuant to the Court's original order, was constitutionally deficient. His argument focuses squarely on the March 2 bond hearing, which was held at Quinonez Perez's request in light of his changed circumstances. See generally Memorandum in Support of Motion to Enforce Judgment, supra. More to the point, Quinonez Perez's present detention results not from the November 25 hearing but from the March 2 hearing—a hearing that fell short of constitutional standards but did not violate an express federal court order.

Under these circumstances, the proper relief is a constitutional bond hearing. At that hearing, the respondents shall bear the burden to prove either (1) by clear and convincing evidence that Quinonez Perez poses a danger to the community or (2) by a preponderance of the evidence that Quinonez Perez poses a flight risk. Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021). If the immigration judge determines the government has met its burden of proving risk of dangerousness or flight, the immigration judge shall consider whether there are alternatives to detention that would mitigate such risk(s).[7]

[7] "Not every person with a pending"—let alone dismissed—"criminal charge poses a danger to the community," and allegations of a domestic dispute do not necessarily and automatically render the petitioner "a danger to the community writ large, or [even] to his family." Atariguana-Buele, 2026 WL 1825934, at *2 n.1, *3 n.2; see also, e.g., Miti v. Moniz, 827 F. Supp. 3d 206, 218 (D. Mass. 2026) ("The clear and convincing standard is a demanding standard to satisfy." (quoting United States v. Anonymous Appellant, 85 F.4th 576, 580 (1st Cir. 2023))).

For the same reasons, Quinonez Perez's motion to enforce the judgment in his first habeas petition is DENIED. Quinonez Perez has not advanced any substantive challenge to the November 25 bond hearing, which was held pursuant to the Court's original order (and any such challenge likely would be moot given the subsequent bond hearing). Because Quinonez Perez has not established a violation of the Court's prior order—and given the Court's resolution of his second habeas petition—the motion to enforce is DENIED.

## III. CONCLUSION

Quinonez Perez's motion to enforce judgment is DENIED. Motion to Enforce Judgment, Quinonez Perez I, No. 25-cv-13445-LTS, Dkt. No. 8. Quinonez Perez's second habeas petition is ALLOWED to the extent described herein. Petition, Quinonez Perez II, No. 26-cv-13317-LTS, Dkt. No. 1.

The respondents SHALL RELEASE Quinonez Perez by 6:00 p.m. on September 23, 2026, UNLESS they first provide him with a bond hearing at which the burdens of proof are as resolved by the First Circuit in Hernandez-Lara and, if the immigration judge determines the government has met its burden of proving risk of dangerousness or flight, the immigration judge shall consider whether there are alternatives to detention that would mitigate such risk(s). Respondents shall not retaliate against Quinonez Perez, at a bond hearing or otherwise, for filing his petitions. Respondents shall file a status report no later than September 28, 2026, describing their compliance with this Order.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge